455 P.2d 447

Paul WEBB, B. C. Maher and Leo T. Jansen, School Electors, Beaver Creek School District No. 26, Appellants,

v.

Warner B. DIXON, County Superintendent of Schools of Yavapai County; Board of Supervisors Yavapai County, Arizona, et al., Appellees.

No. 9525-PR.

Supreme Court of Arizona.

In Banc.

June 9, 1969.

Rehearing Denied July 1, 1969.

David H. Palmer, Prescott, for appellants.

Eino M. Jacobson, County Atty., Yavapai County, for appellees.

UDALL, Chief Justice.

The appellants, Paul Webb, B. C. Maher, and Leo T. Jansen, plaintiffs below, brought an action against the Yavapai County Superintendent of Schools, and others to determine the validity of certain petitions initiated by the residents of the Beaver Creek School District No. 26, for the purpose of annexing that district to Camp Verde School District No. 28. The case was carried to the Court of Appeals on an agreed statement of facts, and is now before us on a petition for review of that court's decision affirming the trial court's judgment that the petitions for annexation were valid.

Several questions are raised, but in view of our decision, the only one that need be answered is whether the petitions for annexation contained the signatures of a majority of the "qualified school electors" in Beaver Creek School District No. 26. The parties agree that

"The petitions do not contain a majority of the qualified school electors in the Beaver School District No. 26, if the

plaintiffs are correct in their position that qualified electors of school districts, under Section 15–473, Arizona Revised Statutes, 1956, includes persons who are registered in Arizona, but who reside in said school district for six months immediately preceding the signing of the petition and filing the same."

After a careful examination of the applicable statutes we have concluded that the plaintiffs' position is well-taken and that the annexation must be nullified.

A.R.S. 15–473 is a part of "Title 15— Education." It provides:

"A. A person who is a registered elector of the state, and who has been a resident of the school district six months immediately preceding the election, is qualified to vote at an election for trustee of the school district in which he resides. *For the purposes of this title*, the terms "qualified school elector", "qualified elector", "school elector", or "elector" shall have the qualifications prescribed in this subsection.

"B. A person offering to vote at a school election shall sign an affidavit stating his address and swearing he is qualified to vote and has not voted at the election being held. A person offering to vote may be challenged, and the election officers shall thereupon have the powers and duties of general election officers * * *." (Italics ours.)

It may be readily seen from these provisions that for the purposes of school elections, a "school elector" is one who is registered for voting purposes, anywhere in the state, and who resides in the school district where he wishes to vote, and has resided there for the preceding six months. Had the legislature desired to require that he also be registered in the district where he seeks to vote, it could easily have so provided.

A.R.S. 15–406 provides that one school district may annex itself to another by a procedure which is initiated by a petition signed by a majority of its *"school electors."* (Italics ours.) When the legislature

provides a definition of "school elector", states that the definition is for use in connection with the purposes of the Title "Education" and then, in the same title, provides that a petition for annexation must be signed by a majority of the district's "school electors", we do not see how the procedure or the language could be expressed more clearly.

■ The defendants, however, contend that these statutes must be read together with A.R.S. 16–101 to 16–110. These statutes set out registration requirements, qualifications of electors, and procedure for voting when the voter no longer lives in the precinct in which he is registered. If these statutes should be read together with those pertaining to school elections, there would be some merit in defendants' argument. However, sections 16–101 to 16–110 are contained in "Title 16—Elections and Electors." They govern general elections, and are not intended to apply to school elections. Section 16–102, for example, provides that:

"No person shall be permitted to vote unless his or her name appears as a qualified elector in both the general county register and in the precinct register or list of the precinct in which such person resides, except as provided in section 16–109."

and A.R.S. 16–109 and 16–110 set out the procedure for voting when one's residence is changed during the period preceding certain elections when the registration lists are closed.

■ One of the principles of statutory construction is that:

"Where * * * there are two provisions applicable to the same subject, one general in its scope, and the other covering a limited portion only of the subject included in the general one, the special statute is to be considered as governing the exception." Whitfield Transportation, Inc. v. Brooks, 81 Ariz. 136, 141, 302 P.2d 526, 529.

■ Another rule of statutory construction which we follow in Arizona, is that

where two statutes are in conflict in any of their provisions, the later one governs. Willard v. Hubbs, 30 Ariz. 417, 422, 248 P. 32 (Overruled on other grounds.) In the instant case, the statutes under Title 16 were enacted in 1933, while the definition of "school electors" in 15–473 is contained in an amendment passed in 1960.

 We need not, however, rest our decision solely upon the frail foundation of rules of statutory construction. In 1967, in the case of Millet v. Board of Supervisors of Maricopa County, 6 Ariz.App. 16, 429 P.2d 508, Donofrio, J. examined a comparable problem and embodied his conclusions in a very competent opinion with which we agree. The case involved a school district bond election, governed by A.R.S. 35–451, which provided that such an election should "conform with the general election laws of the state." The election was contested on the ground that by not using registration lists, and merely requiring the voters to sign an affidavit similar to the one in the instant case, the board had failed to comply with the statue. The opinion states that the legislature failed to set up a means by which the election board could ascertain who were qualified voters; that no one was required to certify or prepare a poll list of electors residing in the district; that the board had to use its own ingenuity to get this information and that the idea of using affidavits of those who desired to vote, might be even more reliable than using the latest poll list available, since property changes hands frequently; that if the legislature wanted the electors' qualifications to depend upon poll lists, it could have so provided, instead of merely providing generally that the elections should conform with general election laws; that even though a current precinct register were available, it would have been based upon precinct boundaries and not upon school district boundaries, and so would not have aided the board in qualifying voters. Since the instant case does not have the additional element of the applicability of A.R.S. 35–451, it is, a fortiori, a case where those in charge of ascertaining

the number of "school electors" should have included persons who were included in the definitions of A.R.S. 15–473, even though they were not registered to vote in that particular school district.

 Because a majority of the school electors was not represented on the petitions for annexation, it follows that the annexation was void and the prior boundaries of the two districts must be re-established.

Reversed and remanded for further proceedings consistent with this opinion

LOCKWOOD, V. C. J., and STRUCK-MEYER and McFARLAND, JJ., concur. NOTE: Justice JACK D. H. HAYS, having announced his disqualification, did not participate in the determination of this appeal.