654 P.2d 281

**PIMA COUNTY, Petitioner,**

v.

**Gary HEINFELD, an employee of the Arizona Auditor General and The Arizona Auditor General, Respondents.**

No. 16223-SA.

Supreme Court of Arizona,
In Banc.

Nov. 12, 1982.

Stephen D. Neely, Pima County Atty., Richard M. Rollman, Deputy County Atty., Harold L. Higgins, Jr., Chief Civil Deputy County Atty., Tucson, for petitioner.

Robert K. Corbin, Atty. Gen., Alan S. Kamin, Asst. Atty. Gen., Phoenix, for respondents.

GORDON, Vice Chief Justice:

In the course of conducting a post audit of Pima County, the Arizona Auditor General requested that the County provide minutes of executive sessions of the Pima County Board of Supervisors for use in preparing the audit report. Pima County refused to turn over the minutes believing that it was prohibited by statute from doing so. The county then brought this special action. We accepted jurisdiction pursuant to Ariz. Const. Art. 6, § 5(1) to answer the question whether Pima County may lawfully provide the Auditor General with minutes of executive sessions of the Pima County Board of Supervisors.

The resolution of this question requires that we reconcile an apparent conflict between a section of Arizona's Open Meeting Law in Title 38 of A.R.S. and a section of Title 41 of A.R.S. A.R.S. § 38-431.03(B) requires that minutes of executive sessions of a public body be kept confidential. It provides:

"Minutes of or discussions made at executive sessions shall be kept confidential except from members of the public body which met in executive session and from officers, appointees or employees who are the subject of discussion or consideration

pursuant to subsection A, paragraph 1. The public body shall instruct persons who are present at the executive session regarding the confidentiality requirements of this article."

In addition to the exceptions included in § 38–431.03(B), there is an exception to § 38–431.03(B) found in A.R.S. § 38–431.07(C). It provides:

"In any action brought pursuant to this section challenging the validity of an executive session, the court may review in camera the minutes of such executive session, and if the court in its discretion determines that such minutes are relevant and that justice so demands, the court may disclose to the parties or admit in evidence part or all of such minutes."

A.R.S. § 41–1279.22(A, B), however, requires that county officials supply the Auditor General with the material needed to conduct an annual post audit. It provides in relevant part:

"A. All county, community college district and school district officers shall afford reasonable and needed facilities, and make returns and exhibits to the auditor general under oath, in the form and at the time he prescribes.

"B. Any person who knowingly fails or refuses to make the prescribed returns or exhibits or to give information as required is guilty of a class 5 felony, and any person who otherwise knowingly obstructs or misleads the auditor general in the execution of his duties as prescribed by this article is guilty of a class 1 misdemeanor."

An analysis of the language and history of the provisions indicates that notwithstanding the requirements of § 41–1279.22, § 38–431.03(B) prohibits Pima County from giving the Auditor General the minutes of executive sessions of the Pima County Board of Supervisors.

Turning first to the language of the two provisions, it is clear that the Auditor General is not specifically excepted from the confidentiality requirement of § 38–431.03(B). There are, however, some exceptions. A.R.S. § 38–431.03(B) indicates quite specifically that members of the governing body which met in executive session and officers, appointees, or employees whose job status is discussed at the session may be given the minutes. A related section of the Open Meeting Law, § 38–431.07(C), specifically authorizes an in camera review of minutes of an executive session by a superior court judge in the event of litigation concerning the validity of the session.

■ A well established rule of statutory construction provides that the expression of one or more items of a class indicates an intent to exclude all items of the same class which are not expressed. *Southwestern Iron & Steel Industries v. State*, 123 Ariz. 78, 597 P.2d 981 (1979); *see National Railroad Passenger Corporation v. National Association of Railroad Passengers*, 414 U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *Central Housing Investment Corp. v. Federal National Mortgage Association*, 74 Ariz. 308, 248 P.2d 866 (1952). Applying this rule to the instant case, the expression of specific exceptions to the confidentiality requirement of § 38–431.03(B) for some persons implies an intent not to except other persons, including the Auditor General.

Furthermore, the provision of A.R.S. § 41–1279.22 requiring that the county "make returns and exhibits to the auditor general" is a general provision. It simply instructs the counties, in general terms, to provide the Auditor General with the information he needs to do his job. The provision of A.R.S. § 38–431.03(B) prohibiting disclosure of minutes of executive sessions, on the other hand, is a specific provision. It deals with a specific type of material and instructs in no uncertain terms that the material must, with clearly enumerated exceptions, be kept confidential.

■ Another well established rule of statutory construction dictates that where two statutes deal with the same subject, the more specific statute controls. *Arden-Mayfair, Inc. v. State*, 123 Ariz. 340, 599 P.2d 793 (1979); *Peabody Coal Co. v. Navajo County*, 117 Ariz. 335, 572 P.2d 797 (1977);

*Webb v. Dixon,* 104 Ariz. 473, 455 P.2d 447 (1969). Application of this rule suggests that § 38–431.03(B) should control. It appears therefore that the language of the two statutory provisions at issue, viewed in light of established rules of statutory construction, indicates that the minutes of executive sessions may not be given to the Auditor General.

An examination of the history of these two provisions compels the same conclusion. Arizona first adopted its Open Meeting Law in 1962. The law required that all meetings of governing bodies at which legal action is taken to be open to the public. Executive sessions were excepted from this requirement subject to conditions set forth in the statute. There was nothing in this first Open Meeting Law that made the minutes of executive sessions confidential. 1962 Ariz.Sess.Laws ch. 138 (originally codified at A.R.S. §§ 38–431 to –431.06 (1962)).

In 1968 the office of Auditor General was created. The legislation creating the office gave the Auditor General the power and the duty to perform post audits of all state agencies as well as all counties. This was accomplished by passage of two separate acts. The first act, originating in the State House of Representatives, created the office of Auditor General and spelled out its powers and duties with respect to state agencies. 1968 Ariz.Sess.Laws ch. 87, §§ 1–2 (originally codified at A.R.S. §§ 41–1279 to –1279.06 (1968)). The second act, originating in the State Senate, spelled out the Auditor General's powers and duties with respect to counties. 1968 Ariz.Sess. Laws ch. 177, §§ 1–5 (originally codified at A.R.S. §§ 41–1279.21 to –1279.24 (1968)). This second act instructed county officials to give the Auditor General the materials needed to perform a post audit. It was essentially the same as current A.R.S. § 41–1279.22. *See* 1968 Ariz.Sess.Laws ch. 177, § 3(A, B) (originally codified at A.R.S. § 41–1279.22(A, B) (1968)).

The Open Meeting Law was amended in 1974. The amendments, for the first time, required that "[m]inutes of executive sessions shall be kept confidential except from members of the governing body which met in executive session." 1974 Ariz.Sess.Laws ch. 196, § 6(B) (originally codified at A.R.S. § 38–431.03(B) (1974)). No exception was made for the Auditor General.

In 1978 the section of Title 41 that dealt with the Auditor General's right of access to materials of state agencies, A.R.S. § 41–1279.04, and the section that dealt with the duty of county officials to provide the Auditor General with information, A.R.S. § 41–1279.22, underwent minor amendment. None of the changes gave the Auditor General the right to review minutes of executive sessions. *See* 1978 Ariz.Sess.Laws ch. 201, §§ 733, 735 (originally codified at A.R.S. §§ 41–1279.04, –.22 (1968)).

The section of Title 38 that dealt with confidentiality of minutes of executive sessions was amended during the same legislative session. No exception to the confidentiality requirement was made for the Auditor General. *See* 1978 Ariz.Sess.Laws ch. 86, § 4(B) (originally codified at A.R.S. § 38–431.03(B) (1978)).

The state Legislature amended A.R.S. § 41–1279.04 again in 1981. The 1981 amendment expanded the Auditor General's right of access to materials in connection with the duty to perform special audits of state agencies at the request of the joint legislative budget committee as set forth in A.R.S. § 41–1279.03(A)(2). The amendment allows the Auditor General to attend executive sessions of the governing body of any state agency for purposes of complying with § 41–1279.03(A)(2). 1981 Ariz.Legis. Serv. ch. 317, § 10(B) (West) (originally codified at A.R.S. § 41–1279.04(B) (1981)). There was nothing in the 1981 amendments that authorized the Auditor General to attend executive sessions of county governing bodies or to review the minutes of such sessions. A.R.S. § 41–1279.22 remained unchanged.

In the Second Legislative Session of 1982 the Legislature again amended the Open Meeting Law. The amendments made two specific exceptions to the confidentiality requirement of A.R.S. § 38–431.03(B). First, A.R.S. § 38–431.03(B) was changed to au-

thorize disclosure of minutes of executive sessions to officers, appointees, or employees whose job status is discussed at the session. 1982 Ariz.Legis.Serv. ch. 278, § 4(B) (West) (originally codified at A.R.S. § 38–431.03(B) (1982)). Second, A.R.S. § 38–431.07 was changed to authorize superior court judges to review minutes of executive sessions if a person brings an action in superior court alleging that he or she was affected by a violation of the Open Meeting Law. 1982 Ariz.Legis.Serv. ch. 278, § 7(C) (West) (originally codified at A.R.S. § 38–431.07(C) (1982)). Nothing in the 1982 amendments authorized disclosure of minutes of executive sessions to the Auditor General.

■ Several facts can be gleaned from this brief history that suggest that Pima County may not provide the Auditor General with minutes of executive sessions of the Pima County Board of Supervisors. Initially it should be noted that the general requirement of § 41–1279.22 was established in 1968. The confidentiality requirement of § 38–431.03(B) was established six years later in 1974. A rule of statutory construction provides that where two statutory provisions conflict, the more recent one controls. *Webb v. Dixon, supra; Mead, Samuel & Co., Inc. v. Dyar,* 127 Ariz. 565, 622 P.2d 512 (App.1980); *Geiszl v. Town of Gilbert,* 22 Ariz.App. 543, 529 P.2d 255 (1975). Application of this rule suggests that § 38–431.03(B) should control.

More significant, however, is the series of amendments these provisions underwent. In 1974 when the Open Meeting Law was amended and executive sessions were made confidential the Auditor General had been performing post audits of counties for six years. Presumably the Legislature was aware that the plain import of making executive session minutes available only to members of the governing body holding the session was to make them unavailable to the Auditor General. Still, the Legislature made no exception.

In 1978 both provisions at issue were amended in the Second Legislative Session. Again, the Auditor General was not excepted from the confidentiality requirement.

In 1981 the Legislature expanded the Auditor General's access to information in certain situations. It allowed the Auditor General to attend some executive sessions of governing bodies of state agencies. At the time the Legislature took this action it must have believed that the confidentiality requirement of § 38–431.03(B) limited the Auditor General's access to information concerning what took place at executive sessions. Nonetheless, it did not give the Auditor General the right to be present at executive sessions of County Boards of Supervisors and it did not specifically give the Auditor General access to minutes of such sessions.

Finally, in 1982 the Legislature made some specific exceptions to the confidentiality requirement of § 38–431.03(B). It did not make an exception for the Auditor General.

The Legislature has revised the statutory provisions at issue several times. It has increased the Auditor General's access to information in some situations without specifically giving him access to minutes of executive sessions of County Boards of Supervisors. It has added to the number of people who may review executive session minutes without including the Auditor General. Under these circumstances we believe it unwise to read into § 38–431.03(B) an exception that the Legislature has not specifically created.

■ Consequently, we hold, based on the language and the history of §§ 38–431.-03(B) and 41–1279.22, that § 38–431.03(B) prohibits Pima County from providing the Auditor General with minutes of executive sessions of the Pima County Board of Supervisors.

The Auditor General expresses some fear that if he is not provided with the minutes of executive sessions he may have to either express only a qualified opinion as to Pima County's financial condition, or be in violation of generally accepted auditing standards of the American Institute of Certified Public Accountants (Institute). This fear is

based on the fact that generally accepted auditing standards suggest that the auditor of a governmental unit examine the minutes of meetings of the governing body of that governmental unit because the minutes may contain information material to the financial condition of the unit. A close look at the standard in issue, however, indicates that the Auditor General's fear may be unfounded.

The provision at issue states in relevant part:

"Minutes of meetings of the governing body are important to the independent auditor. Minutes should be reviewed and any items having a significant effect on the financial statements should be noted.

\*　　\*　　\*　　\*　　\*　　\*

"The following matters are generally recorded in minutes:

"1. Budget approval, in terms of the appropriation ordinance or equivalent, and related tax levy action, together with any supplemental appropriations.

"2. Ordinances and resolutions adopted (usually attached as exhibits or separately filed).

"3. Salary rates and changes.

"4. Major personnel appointments.

"5. Classes and numbers of licenses within each class; approvals and revocations thereof.

"6. Motor fuel tax resolutions.

"7. Bond issue resolutions.

"8. Approval of tax anticipation borrowing.

"9. Advertising for bids on contracts and acceptance thereof.

"10. Special assessment projects and related ordinances and tax levies.

"11. Transfers or loans between funds.

"12. Grant applications.

"13. Sale and purchase of property.

"14. Notices of public hearings and resulting decisions."

American Institute of Certified Public Accountants Inc., *Audits of State and Local Governmental Units* 48–49 (1974). This provision suggests that the reason the Institute recommends that minutes of meetings be reviewed is because matters numbered 1–14, which are material to the financial condition of the governmental unit, are recorded in the minutes. All these matters involve final decisions. Under A.R.S. § 38–431.03, however, no final decision on any matter, including those numbered 1–14 in the Institute's guidelines, may be made at an executive session.[1] Furthermore, if a

1. A.R.S. § 38–431.03 provides in pertinent part:

"A. Upon a public majority vote of the members constituting a quorum, a public body may hold an executive session but only for the following purposes:

"1. Discussion or consideration of employment, assignment, appointment, promotion, demotion, dismissal, salaries, disciplining or resignation of a public officer, appointee or employee of any public body, except that, with the exception of salary discussions, an officer, appointee or employee may demand that such discussion or consideration occur at a public meeting. The public body shall provide the officer, appointee or employee with such notice of the executive session as is appropriate but not less than twenty-four hours for the officer, appointee or employee to determine whether such discussion or consideration should occur at a public meeting.

"2. Discussion or consideration of records exempt by law from public inspection.

"3. Discussion or consultation for legal advice with the attorney or attorneys of the public body.

"4. Discussion or consultation with the attorneys of the public body in order to consider its position and instruct its attorneys regarding the public body's position in pending or contemplated litigation.

"5. Discussions or consultations with designated representatives of the public body in order to consider its position and instruct its representatives regarding negotiations with employee organizations regarding the salaries, salary schedules or compensation paid in the form of fringe benefits of employees of the public body.

"6. Discussion, consultation, or consideration for international and interstate negotiations.

"7. Discussions or consultations with designated representatives of the public body in order to consider its position and instruct its representatives regarding negotiations for the purchase or lease of real property.

\*　　\*　　\*　　\*　　\*　　\*

"C. No executive session may be held for the purpose of taking any legal action involving a final vote or decision." "Legal action" as used in § 38–431.03(C) is defined in § 38–

final decision concerning matters discussed at an executive session is made, it must be made at an open meeting, (A.R.S. § 431.05), and it must be recorded in the minutes of that meeting. A.R.S. § 431.01(B).

It appears that the Auditor General is able to obtain the information deemed significant by the Institute by examining the minutes of open meetings. Consequently, the unavailability of minutes of executive sessions does not deprive him of information the Institute considers material to the financial condition of Pima County. Because he is not deprived of material information, it seems the Auditor General may give an unqualified opinion as to the County's financial condition without violating generally accepted auditing standards.

The Auditor General also indicates that he may disclose in his audit report the fact that he did not have access to executive session minutes. If he deems this necessary we assume that in the interest of accuracy any such disclosure would indicate that ex-

ecutive session minutes were unavailable because Pima County is prohibited by law from disclosing them, and that in light of the fact that no legal action may be taken at an executive session, no unfavorable inference should be drawn from the fact that executive session minutes were unavailable.

Prayer for relief granted in part, ordering that respondents are prohibited from demanding the minutes of the executive sessions conducted by the Pima County Board of Supervisors.

Stay order heretofore issued is vacated.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

431(2) as "a collective decision, commitment or promise made by a majority of the members of a public body pursuant to the constitution, their charter or bylaws on specified scope of appointment or authority, and the laws of this state."